**Valinda F. OLADEINDE, et al., Plaintiffs,**

v.

**CITY OF BIRMINGHAM, et al., Defendants.**

**Civ. A. No. 91–AR–0196–S.**

United States District Court, N.D. Alabama, S.D.

Jan. 18, 1994.

William M. Dawson, Jr., Gayle H. Gear, Dawson Ramsey & Mathis, Birmingham, AL, for Valinda F. Oladeinde, Patricia L. Fields.

Joe R. Whatley, Jr., Cooper Mitch Crawford Kuykendall & Whatley, Donald V. Watkins, Birmingham, AL, for City of Birmingham, Richard Arrington, Arthur Deutsch, R.L. Webb.

Kenneth Lamar Thomas, Thomas Means & Gillis, Montgomery, AL, for Julius Walker.

William N. Clark, Gerald L. Miller, Redden Mills & Clark, Birmingham, AL, for David Barber, Roger Brown.

Frank W. Donaldson, Leon F. Kelly, Jr., U.S. Atty's Office, Birmingham, AL, for U.S.

Doug Davis, Jefferson County Dist. Atty's Office, Birmingham, AL, for State of Ala.

## MEMORANDUM OPINION

ACKER, District Judge.

On July 1, 1993, City of Birmingham, Arthur Deutsch, R.L. Webb and Julius Walker, defendants in the above-entitled cause, filed a motion "to declare the current method of selecting jury venires [in the Northern District of Alabama] illegal and unconstitutional." In this motion, defendants alleged, *inter alia*, that they had "intervened in the pending case of *Hardin v. City of Gadsden*, CV 89–C–2164–M, to join a similar challenge." *Hardin* was and still is pending before Judge U.W. Clemon of this court in its Middle Division. Movants' "similar challenge" was recently decided in their favor by Judge Clemon in *Hardin v. City of Gadsden*, 837 F.Supp. 1113 (N.D.Ala.1993).

There is an unresolved question as to whether or not defendant Deutsch was competent and mentally capable of joining the pending motion. When his own counsel suggested that he is incompetent, they brought into question their right to pursue any mo-

tions or appeals purportedly filed by them on his behalf. Nevertheless, the court will risk ruling on this particular motion in which Deutsch has purportedly joined because the ruling would be the same whether or not Deutsch can be bound by it.

The undersigned deliberately withheld ruling on the motion until Judge Clemon ruled in *Hardin*. After *Hardin* all other judges of this court were presented with an opportunity in *United States v. Grisham*, 841 F.Supp. 1138 (N.D.Ala.1994), to express themselves on the same subject, and they did so.

In *United States v. Underwood*, 617 F.Supp. 713 (N.D.Ala.1985), the undersigned, without as much factual development as in *Hardin* or in *Grisham*, expressed his belief that the same method of selecting jury venires then being used by the Northern District of Alabama, namely, a system of the district-wide random drawing of venire persons using the voter lists of all 31 counties for the source of names, complies with federal law, including the Constitution. The undersigned joined in the opinion of Chief Judge Sam C. Pointer, Jr., Judge James H. Hancock, Judge Robert P. Propst, Judge Sharon Lovelace Blackburn, Senior Judge Seybourn H. Lynne, Senior Judge J. Foy Guin, Jr., and Senior Judge E.B. Haltom, Jr., concurring in the conclusions reached by Judge Edwin L. Nelson in *Grisham*, in which Judge Nelson found that the jury selection method now employed by this court complies with all statutory and constitutional mandates. Judge Clemon held to the contrary in *Hardin*. At least theoretically, it may be possible to reconcile *Hardin* with *Grisham*, but, try as he may, the undersigned has not been able to do it.

In view of the undersigned's expressions in *Underwood* and in *Grisham*, there may be no reason to write an opinion while in the process of overruling defendants' present motion. This court could simply deny the motion while reaffirming what it has already said in *Underwood* and in *Grisham*. And yet, there is something else to say that this court thinks pertinent and important, even though perhaps implicit in *Grisham*. It is the product of the repeal of 28 U.S.C. § 1393,

an event which took place in 1988 after *Underwood* was decided, and an event that was the primary subject of this court's recent opinion in *Bishop v. C & P Trucking*, 840 F.Supp. 118 (N.D.Ala.1993).

The repeal of 28 U.S.C. § 1393 did away with divisional venue in the Northern District of Alabama, just as it did in every federal district made up of statutory divisions. A plaintiff can now choose his divisional forum unless the judge to whom the case is assigned (necessarily a judge assigned to that particular division) transfers the case to another division, either *sua sponte* or on motion of a defendant, a somewhat questionable practice in view of the repeal of 28 U.S.C. § 1393. For instance, the undersigned, who is one of the judges in the Northern District assigned to its Middle Division, which has its courthouse in Gadsden, if he continues to do what he did in *Bishop*, namely, to order a Middle Division case tried in Birmingham because of (1) the ease of highway access from Gadsden to Birmingham, (2) the presence of security in Birmingham not available in Gadsden, and (3) the presence of a law library in Birmingham not available in Gadsden, and if venires in future should be drawn by division instead of by district, the undersigned's Middle Division litigants would always be exposed to a venire composed of the ethnic mix contained within the Southern Division, which is different from the ethnic mix of venires drawn only from within the Middle Division or from venires drawn from the entire Northern District. In other words, what the use of divisional venues, as suggested in *Hardin*, would do would not only "rob Peter to pay Paul" but would let a judge, like the undersigned, who sits regularly in the Southern Division in Birmingham, conduct all jury trials in Birmingham, no matter what the division in which the case was filed, and the litigants would always get a jury reflecting the ethnic mix of the Southern Division and composed entirely of residents of the Southern Division. What the undersigned is now routinely doing in his civil cases, as reflected in *Bishop*, the entire court has been doing for years in criminal cases, all of which are tried in Birmingham except in very unusual circumstances. There

can be no logical or legal reason for any distinction between the method for selecting civil juries and the method for selecting criminal juries. Further, to draw from different jury pools in civil and criminal cases would be a logistical nightmare, would be terribly expensive and would be totally impractical. Lastly, if petit jurors must be selected by division in order to meet constitutional and/or statutory standards, the potential for venue-venire shopping becomes apparent.

For these reasons and for the reasons recited in *Underwood* and *Grisham*, defendants' motion to declare invalid the current jury selection method in the Northern District of Alabama will be denied by separate order.